653 So.2d 165 (1995)
Paula J. OAKS and Brian Lee Oaks, Plaintiffs-Appellants,
v.
Albert J. DUPUY, III, et al., Defendants-Appellees.
No. 26729-CA.
Court of Appeal of Louisiana, Second Circuit.
April 5, 1995.
Writ Denied June 16, 1995.
*166 Smitherman, Lunn, Chastain & Hill by Michael E. Michael E. Powell, III, Shreveport, W. Eugene Golden & Associates by W. Eugene Golden, Shreveport, for appellant.
Blanchard, Walker, O'Quin & Roberts by Reginald W. Abrams, Shreveport, Cook, Yancey, King & Galloway by Kenneth Mascagni, Shreveport, Kitchens, Benton, Kitchens, & Warren by Gradon K. Kitchens, III, Minden, for appellee.
Before NORRIS, and HIGHTOWER, JJ., and CULPEPPER, J. Pro Tem.
HIGHTOWER, Judge.
In this action arising from a head-on automobile accident and alleging negligent entrustment against the offending driver's father, plaintiffs appeal an adverse summary judgment denying coverage under a general liability policy issued to the parent and his wholly owned corporation. We affirm.

Background
Albert J. Dupuy, III ("Jay"), while driving a 1985 Chevrolet Blazer apparently owned by Mimosa Gardens Service Corporation ("Mimosa"), crossed the centerline and struck a vehicle driven by Paula J. Oaks. The head-on collision seriously injured Oaks and her small son who rode as a passenger. Jay's severe intoxication (0.22 blood alcohol level) allegedly played a factor in precipitating the accident.
Oaks and her husband, individually and on behalf of their minor son, filed suit against, among others, Jay; his father, Albert J. Dupuy, Jr. ("Bud"); Mimosa; State Farm Insurance Company, the liability insurer of the Blazer;[1] and Hermitage Insurance Company ("Hermitage"), the general liability insurer for Bud and Mimosa. In addition to alleging Jay's careless operation of the Blazer, plaintiffs asserted a theory of negligent entrustment against his father, who purportedly permitted his major son to use the company automobile despite awareness of his alleged propensity to drive recklessly and dangerously while under the influence of alcohol.[2]
Responding with a motion for summary judgment, Hermitage contended that its manufacturer's and contractor's ability policy excluded coverage for the use or operation of any automobile owned by any insured, viz., Mimosa or Bud.[3] The trial *167 judge, finding the exclusion applicable, dismissed all claims against Hermitage. This appeal ensued.

Discussion

Automobile Use Exclusion
In their first assignment of error, plaintiffs say that the automobile use exclusion of Hermitage's policy does not preclude the negligent entrustment claim against Bud. We disagree.
In Mahlum v. Baker, 25,876 (La.App. 2d Cir. 06/24/94), 639 So.2d 820, we again recognized that such a determination calls upon the court to decide whether the insured's complained-of conduct is a legal cause of the injury, and, if so, whether the harm arose out of the use of an automobile. We quoted from Barber v. Lee, 597 So.2d 1163 (La.App. 1st Cir.1992) (citing Manuel v. Luckett, 577 So.2d 203 (La.App. 1st Cir.1991), writ denied, 580 So.2d 378 (La.1991)), summarizing that:
To determine whether the automobile use exclusion applies, we must answer both of these questions affirmatively: (1) whether the conduct of the insured of which the plaintiff complains was a legal cause of injury? (2) whether it was a use of the automobile? ... As to the second requirement, in order for the harm to arise out of use, the automobile must be essential to the theory of liability. Picou v. Ferrara, 412 So.2d 1297 (La.1982). The specific duty breached by the insured must flow from the use of the automobile. Jones v. La. Timber Co.], 519 So.2d [333] at 336 [(La.App. 2d Cir.1988)]. If the specific duty breached by the insured existed independently of the automobile, then liability does not arise out of use even though the duty could have been performed by use of an automobile. Massey v. Century Ready Mix Corp., 552 So.2d 565 (La.App. 2d Cir. 1989), writ denied, 556 So.2d 41 (La.1990); Jones, 519 So.2d at 336.
Under this analysis, even assuming Bud's actions to have been a legal cause of the accident in question, coverage will be denied if the use of an automobile or motor vehicle owned by any insured is essential to the asserted theory of liabilityin this case, the negligent entrustment of the Blazer to Jay. It is in this regard that appellants' assignment fails.
In their petition, plaintiffs assert that Bud knew or should have known of his son's propensity to "consume alcoholic beverages and then drive" and, thus, became "negligent in entrusting the vehicle to [Jay]." In brief, they phrase the father's obligation as a general one not to allow any incompetent individual to use any dangerous instrumentality. This approach obviously seeks to portray Bud's duty as existing independently of the automobile. Cf. LeJeune v. Allstate Ins. Co., 365 So.2d 471 (La.1978) (holding that a deputy sheriff's breach of his law enforcement duties, by failing to guard an intersection, arose independently from the use of an automobile). See also Sarp v. U.S. Fidelity & Guar. Co., 572 So.2d 158 (La.App. 1st Cir. 1990), writ denied, 573 So.2d 1136 (La.1991); Frazier v. State Farm Mutual Auto. Ins. Co., 347 So.2d 1275 (La.App. 1st Cir.1977). Plaintiffs' efforts, however, are not impressive. Similarly, their reliance upon Smith v. USAA Casualty Ins. Co., 532 So.2d 1171 (La.App. 4th Cir.1988), is misplaced. We specifically rejected the reasoning of that case in Mahlum, supra. See also, McKenzie and Johnson, 15 Louisiana Civil Law TreatiseInsurance Law and Practice § 72 (1986 & Supp.1994).
Plaintiffs, quite simply, fail to recognize what their case is about. Despite any general requirement that Bud not entrust dangerous instruments into the hands of unfit persons, it is clear that no personal injuries could have resulted to these plaintiffs, absent actual use of the vehicle. Consequently, at all junctures, Jay's "use" and "operation" of the Blazer remains a critical and essential element of appellants' negligent entrustment case. See Picou, supra, finding coverage excluded in a negligent entrustment case concerning an automobile. See also Mahlum, supra; Hartford Accident and Indem. Co. v. Joe Dean Contractors, Inc., 584 So.2d *168 1226 (La.App. 2d Cir.1991); Massey, supra; Jones, supra. To conclude otherwise is to disregard common sense and attempt to play word games. See Mahlum, supra; McKenzie and Johnson, supra at § 65.
Most assuredly, Hermitage never designed or intended its manufacturer's and contractor's insurance to cover risks for which automobile liability policies are readily available. Cf. Hartford, supra, suggesting that the "use" exclusions of general liability policies should be interpreted consistently with automobile insurance provisions requiring fault to arise from "use" of the vehicle. Accordingly, the trial court correctly found the exclusion applicable in the case at hand.

Ambiguous Terms
In their second assignment, plaintiffs contend that policy ambiguity causes the automobile use exclusion to be inapplicable. Again, we disagree.
An insurance contract constitutes the law between the parties. Thus, the agreement will be enforced as written if the policy terminology at issue is clear and expresses the intent of the parties. Hartford, supra, and authorities therein. No single portion should be construed independently of the whole, i.e., the policy is to be considered in its entirety. Although ambiguities should be construed in favor of the insured and against the insurer, courts lack authority to alter or strain policy terms under the guise of contractual interpretation when provisions are couched in unambiguous language. Indeed, an insurance contract should be given no meaning which enlarges or restricts its provisions beyond what its terms reasonably contemplated, or which leads to an absurd conclusion. Id.; Lindsey v. Poole, 579 So.2d 1145 (La.App. 2d Cir.1991), writ denied, 588 So.2d 100 (La.1991).
Contrary to plaintiffs' arguments, the wording on the jacket and cover sheet, "GeneralAutomobile Liability Policy," does not change the clear and express provisions of the contract. While labels and headings of a contract may be pertinent in a given inquiry concerning coverage, any one aspect of an insurance policy cannot be construed separately and at the expense of disregarding the language of the policy as a whole. South Cent. Bell Tel. Co. v. KA-JON Food Stores of La., Inc., 93-2926 (La. 05/24/94), 644 So.2d 357, vacated on other grounds, 93-2926 (La. 09/15/94), 644 So.2d 368; Benton Casing Serv., Inc. v. Avemco Ins. Co., 379 So.2d 225 (La.1979).
In the present matter, reviewing the insurance documents as a whole, we find no ambiguity. The outside portion of the jacket, designed to be utilized with a variety of insurance policies sold by Hermitage, conveniently sets forth various conditions and definitions common to all types of liability coverage. Even so, the contract contained inside clearly reflects that Bud purchased a manufacturer's and contractor's liability policy excluding protection for damages arising from the use of automobiles owned by the insureds. Similarly, the premium page shows the payment of only one premium for one form of coverage ("Manufacturers' and Contractors' Liability Insurance"), even though eighteen other available types are listed. Obviously, the insureds understood what had been purchased; Bud and Mimosa even acquired a State Farm public liability policy expressly providing coverage for the company Blazer.
Plaintiffs also call attention to policy language stating that "[t]he insurance afforded applies separately to each insured against whom claim is made or suit is brought...." Relying upon that provision, they apparently maintain it is not possible for both Bud and Mimosa to be "owners" of the vehicle, and, thus, if one of these named insureds is considered the titleholder, the automobile use exclusion does not apply to the other. Any material factual issue, of course, would preclude the granting of summary judgment.
The use exclusion, however, refers to automobiles owned by "any insured." That unambiguous language, then, should not be misshaped through an overreading of the provision noted by plaintiffs. Such tortured constructions, seizing on every word as a possible source of confusion, fail to demonstrate ambiguity and will be dismissed as mere sophistry. Murphy v. La. Farm Bureau Mut. Ins. Co., 569 So.2d 637 (La.App. 2d *169 Cir.1990). Consequently, with the exclusion plainly applying to both Bud and Mimosa, any dispute regarding vehicle ownership between these two parties is irrelevant.

Conclusion
For these reasons, the summary judgment granted by the district court in favor of Hermitage Insurance Company is affirmed. Costs of the appeal are assessed against plaintiffs.
AFFIRMED.
NOTES
[1] State Farm admitted Jay's liability and deposited the $100,000 limits of its policy into the court registry for plaintiffs' benefit, while reserving all rights against the remaining parties.
[2] Plaintiffs allege that Jay had a history of consuming alcohol and operating a motor vehicle. They maintain he had been involved in several incidents, including a boating accident wherein at least one person died, the driving of a motor vehicle into a restaurant, a collision with a parked car, speeding violations, and a previous citation for DWI. On at least one of these occasions, and possibly all, Bud apparently paid for the resulting damages.
[3] The language of the policy pertinently provides: Exclusions

This insurance does not apply:
* * * * * *
(b) To bodily injury or property damage arising out of the ownership, maintenance, operation, use, loading or unloading of
(1) any automobile or aircraft owned or operated by or rented or loaned to any insured, or(2) any other automobile or aircraft operated by any person in the course of his employment by any insured.