632 So.2d 1158 (1994)
James Earl OSBON, et al.,
v.
NATIONAL UNION FIRE INSURANCE COMPANY.
No. 93-C-1975.
Supreme Court of Louisiana.
February 28, 1994.
*1159 Geary S. Aycock, Arbour & Aycock, West Monroe, Frank W. Hanvey, Anzalone, Parker & Hanvey, Monroe, for applicant.
Brian E. Crawford, Crawford & Anzelmo, Susan N. Belsom, Monroe, for respondent.
MARCUS, Justice[*].
In 1968, Pauline J. and James Osbon, Sr. divorced. In 1971, Pauline purchased a home which was financed with a mortgage from Troy & Nichols, Inc. The mortgage required Pauline to maintain insurance, including coverage for loss by fire, on her home. National Union Fire Insurance Company of Louisiana (National Union) was selected as the insurer and P.J. Osbon was the named insured.
In 1978, Pauline remarried James Osbon. On February 15, 1990, Pauline's home was destroyed by a fire. An insurance claim was filed with National Union. National Union denied the claim asserting the defense of arson. Pauline and James filed suit. On September 4, 1991, an amended petition was filed removing James Osbon[1] as a plaintiff and alleging that the property was Pauline Osbon's separate property. A jury found that James Osbon "intentionally set or was responsible" for the fire. The trial judge entered a judgment in favor of National Union rejecting Pauline Osbon's demands. The court of appeal affirmed finding that James Osbon's act of arson was covered by the intentional loss exclusionary clause contained in the insurance policy.[2] On Pauline Osbon's application, we granted certiorari to review the correctness of that decision.[3]
The issue for our determination is whether Pauline Osbon is barred from recovering under the policy issued by National Union because her home and its contents were destroyed by a fire intentionally set by her husband, James Osbon, Sr.
La.R.S. 22:691 sets forth the form for standard fire insurance policies issued in the State of Louisiana. The pertinent provisions of the standard fire insurance policy form provide:
SECOND PAGE OF STANDARD FIRE POLICY
* * * * * *
Perils not includedThis company shall not be liable for loss by fire or other perils insured against in this policy caused, directly or indirectly, by:
. . . . .
(i) neglect of the insured to use all reasonable means to save and preserve the property at and after a loss....
. . . . .
Conditions suspending or restricting insurance. Unless otherwise provided in writing added hereto this Company shall not be liable for loss occurring:
(a) While the hazard is increased by any means within the control or knowledge of the insured....

La.R.S. 22:691F(2) (emphasis added). The phrase "the insured" is not defined in the Insurance Code. We find that the phrase "the insured" is ambiguous because it could refer to the named insured, any insured as defined in the policy, or the particular insured seeking coverage who commits an act triggering the exclusion or condition.
The article "the" is singular and is used to particularize the subject spoken of. "The" is a word of limitation. Black's Law Dictionary (6th ed.). Hence, "the" insured means only one insured. We find that the *1160 phrase "the insured" refers to a specific insured, namely, the insured who (1) is responsible for causing the loss and (2) is seeking to recover under the policy. Accordingly, under La.R.S. 22:691F(2), a loss by fire is not covered if the insured seeking coverage is responsible for causing the loss by neglecting to "use all reasonable means to save and preserve the property at and after a loss." Here, Pauline Osbon is not responsible for causing the loss; therefore, coverage is not excluded. Additionally, under La.R.S. 22:691F(2), coverage is suspended or restricted when "the hazard is increased by any means within the control or knowledge" of the person seeking coverage. Since the hazard was not increased by any means within the control or knowledge of Pauline, coverage in favor of Pauline is not suspended or restricted. Accordingly, under the standard fire policy form, Pauline Osbon, an innocent insured, would not be barred from seeking insurance coverage for the loss caused by the fire intentionally set by her husband.
This interpretation is in line with the legislative intent in enacting the exclusion and condition contained in La.R.S. 22:691F(2). Specifically, we do not believe that the legislature intended to impute the incendiary actions of an insured to the innocent co-insured who has no control over the unauthorized conduct. Nor do we think that the legislature intended to penalize an innocent insured, here, a victim of arson, with the perpetrator of a wrongful act. That is, having lost the property, the innocent insured would be victimized once again by the denial of the proceeds under the insurance policy. We do not believe that the legislature intended for the statute to have such a harsh and inequitable result.
Moreover, this interpretation is in line with other jurisdictions that have interpreted similar exclusions and conditions contained in statutes and insurance policies. Courts in other jurisdictions generally focus on the article modifying the word "insured," specifically, "the" insured, "an" insured, and "any" insured. A majority of courts interpret "any insured" as applying to all insureds as defined by the policy. Thus, the entire policy would be void if any one insured committed arson thereby precluding recovery by an innocent co-insured. Spezialetti v. Pacific Employers Ins. Co., 759 F.2d 1139 (3rd Cir. 1985); Hobgood and Lamb, Recovery by an Innocent Co-Insured, For The Defense 3 (July 1993). Similarly, "an insured" has been interpreted as applying to any unspecified insured that commits a wrongful act. Thus, a policy using the phrase "an insured" would bar all insureds from recovering if any insured commits arson. Hobgood and Lamb, supra, at 8-9; Vance v. Pekin Ins. Co., 457 N.W.2d 589 (Iowa 1990). Conversely, courts have found that "the insured" is singular and voids the policy only with respect for the insured who commits the wrongful act thereby permitting the innocent insured to recover. Ponder v. Allstate Ins. Co., 729 F.Supp. 60 (E.D.Mich.1990).
Although Pauline Osbon is entitled to coverage under our interpretation of La.R.S. 22:691, this does not end our inquiry because the exclusion in the policy issued by National Union does not conform with the condition and exclusion provisions contained in the statute. The relevant provisions of the National Union policy provide:
DEFINITIONS
In this policy, "you" and "your" refer to the "named insured" shown in the Declarations and the spouse if a resident of the same household ... In addition, certain words and phrases are defined as follows:
* * * * * *
3. "insured" means you and residents of your household who are:
a. your relatives; ...
EXCLUSIONS
We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.
* * * * * *
8. Intentional Loss, meaning any loss arising out of any act committed:
a. by you or at your direction; and

*1161 b. with the intent to cause a loss.
The language of the policy excludes coverage when an intentional act is caused by the named insured or a spouse who is a resident of the household. Thus, it appears that under the policy, an innocent spouse such as Pauline Osbon is excluded from seeking coverage because her loss was a result of the intentional wrongful conduct of her husband.
Thus, our inquiry is narrowed. The issue becomes whether the policy must be reformed to conform with the standard fire insurance policy as provided by La.R.S. 22:691.
La.R.S. 22:691 B provides that "[n]o policy or contract of fire insurance shall be made, issued or delivered by any insurer... on any property in this state, unless it shall conform as to all provisions, stipulations, agreements and conditions, [of the standard fire insurance policy]." Additionally, La.R.S. 22:691.2 provides:
A. Notwithstanding the requirements of R.S. 22:691 concerning the use of the standard fire policy, the use of such form shall not be required in the event the policy forms covering the property are equivalent to or exceed the provisions of the standard fire policy.
B. In the event that the policy forms used are not equivalent to or do not exceed the terms of the standard fire policy, all of the provisions of the standard fire policy shall become a part of the policy by physically attaching the standard fire policy thereto.
C. Failure to attach the standard fire policy as provided in R.S. 22:691.2(B) shall not affect the rights of the insured under the standard fire policy and the provisions of the standard fire policy shall become a part of the contract and shall prevail.
Moreover, unlike other standard provisions required by the Insurance Code, provisions required by the standard fire insurance policy form cannot be waived by the commissioner of insurance. La.R.S. 22:623.[4] The foregoing makes it clear that provisions required by La.R.S. 22:691 are mandatory and that a fire insurance policy must be written either in conformity with the statute or in a manner which is equivalent to or exceeds the coverage provided by statute.
The intentional act exclusion in National Union's policy does not conform to the standard fire policy form provided in La.R.S. 22:691. Moreover, the intentional act exclusion coupled with the definition section of the policy does not provide coverage equivalent to or in excess of the coverage required by La.R.S. 22:691F(2) as interpreted by this court. Since National Union failed to provide coverage in conformity with or in excess of the standard fire insurance policy form, reformation of the policy to conform with the standard fire policy form is appropriate. See Rudloff v. Louisiana Health Services and Indemnity, 385 So.2d 767, 771 (La.1980). Thus, Pauline Osbon is not barred from recovering under the policy issued by National Union for the loss occasioned by the incendiary actions of her husband.
The court of appeal found that the damage exceeded the National Union policy limits of $32,000.00 for the dwelling, Pauline Osbon's separate property, and $6,400.00 for loss of use thereof. Hence, she is entitled to recover these amounts less any amount paid to the mortgagee under the loss payable clause contained in the policy. Additionally, the court of appeal found that the damage exceeded the policy limits of $16,000.00 for contents. Since the record does not reflect Pauline Osbon's interest in the contents of the dwelling, the extent to which she is entitled to recover under the policy for this loss cannot be determined. Accordingly, we find it is necessary to remand the case to the trial court to take further evidence on Pauline Osbon's interest in the contents and to render a proper judgment for this loss.

*1162 DECREE

For the reasons assigned, the judgment of the court of appeal is reversed and set aside. The case is remanded to the district court to enter a judgment in favor of Pauline Osbon and against National Union Fire Insurance Company of Louisiana for $32,000.00 for the dwelling and $6,400.00 for the loss of use less any amount paid to the mortgagee under the loss payable clause contained in the policy. The district court is further ordered to take evidence on Pauline Osbon's interest in the contents and to render a proper judgment for this loss. The rights of all parties to appeal the issue of the extent of coverage of the contents to the court of appeal are reserved. The district court is to fix the appropriate interest due in the judgment. All costs are assessed against National Union Fire Insurance Company of Louisiana.
NOTES
[*] Pursuant to Rule IV, Part 2, § 3, Dennis, J. was not on the panel which heard and decided this case.
[1] James Osbon, Sr. died on October 27, 1990, approximately one year prior to trial.
[2] 621 So.2d 78 (La.App. 2d Cir.1993).
[3] 629 So.2d 360 (La.1993).
[4] La.R.S. 22:623 provides in pertinent part:

A. Insurance contracts shall contain such standard provisions as are required by the applicable chapters of this Code pertaining to contracts of particular kinds of insurance. The commissioner of insurance may waive the required use of a particular standard provision other than the provisions required in Part XV [governing the Standard Fire Policy,] of this chapter....